**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------- x | Case No. 17-cv-05775 |
| YEE TING LAU *and* JEFF ALEXANDER, *on behalf of themselves and others similarly situated*,    : | |
| Plaintiffs,    : | **FIRST AMENDED CLASS ACTION COMPLAINT** |
|    : | **JURY TRIAL DEMANDED** |
| - against –    : | |
| PRET A MANGER (USA) LIMITED, and JOHN DOE CORPORATIONS 1-100,    : | |
| Defendants.    : | |
| ------------------------------------------------------- x | |

Plaintiffs YEE TING LAU and JEFF ALEXANDER ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class Action Complaint against PRET A MANGER (USA) LIMITED (the "Parent Defendant") and JOHN DOE CORPORATIONS 1-100 (the "Subsidiary Defendants") (collectively, "Defendants" or "Pret A Manger") and allege as follows:

## NATURE OF THE ACTION

1.    This is a consumer protection action arising out of deceptive and otherwise improper business practices that Defendants, PRET A MANGER (USA) LIMITED and JOHN DOE CORPORATIONS 1-100, engage in with respect to the packaging of their Pret A Manger® sandwich wraps.

2.    Defendants' food services enterprise operates stores throughout New York, (as of this date, 49 locations in New York City) as well as in Chicago, Washington, D.C. and Boston.

3.    The wraps are invariably packaged in partially opaque packaging so that consumers cannot see the empty air ("slack-fill") in the wrap. A cardboard shroud prevents consumers from seeing that the wraps' packaging contains air in the middle, and not the food that the packaging represents to them. This packaging of the wraps in comparison to the volume of food contained therein makes it appear to consumers that they are buying more than what is actually being sold, thus deceiving them into paying for air and denying them the benefit of their bargain. Consumers are denied the benefit of their bargain because they pay for a full wrap with only minimal air inside the packaging but actually receive considerable air and thus less food than promised.

4.    Defendants are able to charge more money per wrap by misrepresenting the amount of food in each wrap container. Defendants charge prices commensurate with full wrap containers, even though they sell partially empty containers.

5.    Defendants violated statutes enacted in New York and in all the states in which they operate that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. Defendants have deceived consumers throughout New York and the United States by misrepresenting the volume of their Products, inducing consumers to reasonably rely on Defendants' misleading packaging. Through

these unfair and deceptive practices, Defendants have collected millions of dollars they would not have otherwise earned.

6. As detailed below, Plaintiffs LAU and ALEXANDER became the victims of these deceptive practices when they purchased wraps from Defendant. Plaintiff LAU purchased a Chakalaka Wrap with about one full inch of empty space between the two halves of the wrap, and a Shrimp & Cilantro Wrap with about 1.5 inches of empty space between the two halves of the wrap. Plaintiff ALEXANDER purchased a Summer Seasonal Wrap containing about 1.75 inches of empty space. All empty space in Plaintiffs' wraps was concealed behind a 3.5 inch cardboard shroud.

7. Plaintiffs now bring this proposed consumer class action on behalf of themselves and all other similarly situated consumers, who from the applicable limitations period up to and including the present (the "Class Period"), purchased the following for consumption and not for resale in New York, Massachusetts, Illinois, and the District of Columbia;

    a. Chakalaka Wrap
    b. Summer Seasonal Wrap
    c. Greek Falafel Wrap
    d. Green Goddess Turkey Wrap
    e. Avocado & Toasted Pine Nut Wrap
    f. Bang Bang Chicken Wrap
    g. Mustard, Chicken and Swiss Wrap
    h. Spicy Shrimp & Cilantro Wrap
    i. Any other Pret A Manger sandwich wrap that is packaged with concealed empty space in between the two halves (collectively, "the Products")

8. Images of the Products are provided below and under **Exhibit A**.

9. Defendant continually introduces new flavors of Products and phases out old flavors. Nonetheless, the Products are identical in how they are packaged.

10. They are available at numerous Pret A Manger locations within the states of New York, Massachusetts, Illinois and the District of Columbia.

11.     During the Class Period, Defendants manufactured, marketed and sold the Products throughout New York, Massachusetts, Illinois and the District of Columbia. Defendants purposefully sold the Products with misleading packaging as part of a systematic practice.

12.     Plaintiffs bring this action to stop Defendants' deceptive practice. Plaintiffs expressly do not seek to contest or enforce any state law that has requirements beyond those established by federal laws or regulations.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

14.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

15.     The Court has personal jurisdiction over Defendants because its Products are advertised, marketed, distributed and sold throughout New York State. Defendants engage in the wrongdoing alleged in this Complaint in New York State; Defendants are authorized to do business in New York State. Defendants have sufficient minimum contacts with New York and has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants engaged in substantial and not isolated activity within New York State.

16.     Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and Defendants are subject to personal jurisdiction in this District. Plaintiffs purchased Defendants'

3

Products in New York County. Moreover, Defendants distributed, advertised and sold the Products, which are the subject of the present Complaint, in this District.

## PARTIES

*Plaintiffs*

17.     Plaintiff LAU is, and at all relevant times hereto has been, a citizen of the state of New York and resides in Kings County. On June 12, 2017, Plaintiff LAU purchased the Pret A Manger® Chakalaka Wrap Product for personal consumption from a Pret A Manger located at 265 Madison Avenue, New York, NY 10016 for $7.49 and was financially injured as a result of Defendants' deceptive conduct as alleged herein. Plaintiff LAU did not receive the quantity of food that she paid for. Plaintiff LAU paid the above sum to receive a whole Chakalaka wrap but the wrap Plaintiff LAU received was missing a large segment in the space covered by an opaque cardboard shroud.

18.     As the result of Defendants' deceptive conduct as alleged herein, Plaintiff LAU was injured when she paid full price for the Product but did not receive a full container without concealed empty space. She paid $7.49 for the Product on the reasonable assumption that the wrap fully occupied the package. But a significant portion of the space within the package was deceptively not comprised of the wrap. Accordingly, she was injured in the amount of the percentage of the purchase price equal to the percentage of empty space in the Product. LAU's Product was worth less than the amount she paid for it, but Defendants were able to charge a full $7.49 because of their quantity misrepresentation. Her Product's excessive price, and Plaintiff LAU's consequent overpayment, are the direct result of Defendants' misrepresentation of the quantity of food she was purchasing.

19.     Subsequently, Plaintiff LAU purchased a Spicy Shrimp & Cilantro Wrap for $7.79. Plaintiff LAU's Spicy Shrimp & Cilantro Wrap contained empty space concealed under the

cardboard shroud. Accordingly, she did not receive the full quantity of food that she paid for and was injured.

20.     Plaintiff LAU desires to consume the Products, and intends to do so to the extent she infers that a particular unique wrap is an aberration that is not misleadingly packaged, i.e. that it contains the full quantity of food represented and no slack-fill. However, she cannot rely on the truthfulness of the packaging, absent corrective changes to the packaging. Moreover, because Defendants block consumers' view of the wraps with an opaque cardboard shroud, she cannot absolutely determine whether or not an individual wrap is an aberration that does not contain slack-fill.

21.     Plaintiff ALEXANDER is, and at all relevant times hereto has been, a citizen of the state of New York and resides in Manhattan County. On June 5, 2017, Plaintiff ALEXANDER purchased a Pret A Manger® Summer Seasonal Wrap Product for personal consumption from a Pret A Manger located at 350 Hudson Street, New York, NY 10014 for approximately $7.49 and was financially injured as a result of Defendants' deceptive conduct as alleged herein. Plaintiff ALEXANDER did not receive the quantity of food that he paid for. Plaintiff ALEXANDER paid the above sum to receive a whole Summer Seasonal Wrap but the wrap Plaintiff ALEXANDER received was missing a large segment in the space covered by an opaque cardboard shroud.

22.     As the result of Defendants' deceptive conduct as alleged herein, Plaintiff ALEXANDER was injured when he paid full price for the Product but did not receive a full container without concealed empty space. He paid approximately $7.49 for the Product on the reasonable assumption that the wrap fully occupied the package. But a significant portion of the space within the package was deceptively not comprised of the wrap. Accordingly, he was injured in the amount of the percentage of the purchase price equal to the percentage of empty space in

the Product. ALEXANDER's Product was worth less than the amount he paid for it, but Defendants were able to charge approximately $7.49 because of their quantity misrepresentation. His Product's excessive price, and Plaintiff ALEXANDER's consequent overpayment, are the direct result of Defendants' misrepresentation of the quantity of food he was purchasing.

23.     Should Plaintiff ALEXANDER encounter the Products in the future, he could not rely on the truthfulness of the packaging, absent corrective changes to the packaging. However, Plaintiff ALEXANDER would still be willing to purchase the Product, as long as he is assured that she is not paying for empty space within the package when buying the Product. However, he cannot rely on the truthfulness of the packaging, absent corrective changes to the packaging.

*Defendants*

24.     PRET A MANGER (USA) LIMITED is a foreign business corporation doing business in New York State with a principle executive office located at 853 BROADWAY, 7TH FLOOR, NEW YORK, NEW YORK, 10003, and an address for service of process, located at C/O DAVIS & GILBERT LLP, ATTN: CURT C. MYERS, ESQ., 1740 BROADWAY, NEW YORK, NEW YORK, 10019.

25.     Each of the Subsidiary Defendants is 100% owned by the Parent Defendant, PRET A MANGER (USA) LIMITED.

26.     The above-named corporations operate as a single integrated enterprise. Specifically, they are engaged in related activities, share common ownership and have a common business purpose. The Defendants operate a food services enterprise under the trade name "Pret A Manger."

27.     Defendants' website is located at https://www.pret.com/en-us.

6

28.     There are many Pret A Manger locations operating in multiple states, including at least 49 locations in New York, 7 in Massachusetts, 11 in Illinois and 10 in the District of Columbia.

29.     Defendants manufacture, market, advertise and sell their extensive "Pret A Manger®" line of wrap and sandwich products throughout the United States, including the Products purchased by Plaintiffs and the Class. Defendants manufactured, packaged, distributed, advertised, marketed and sold the misbranded Products to millions of customers nationwide, including in New York.

30.     The labeling, packaging, and advertising for the Products, relied upon by Plaintiff, were prepared and/or approved by Defendants and their agents, and were disseminated by Defendants and their agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Products and reasonably misled reasonable consumers, i.e. Plaintiffs and the Class, into purchasing the Products at an inflated price. Defendants owned, marketed and distributed the Products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging, and advertising for the Products.

## FACTUAL ALLEGATIONS

### Plaintiffs' Products Are Slack-Filled

31.     "Slack-fill" is "the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a). "Non-functional" slack-fill is "the empty space in a package that is filled to less than its capacity for reasons other than" the six functional justifications listed in 21 C.F.R. § 100.100(a)(1)-(6), such as manufacturing requirements, unavoidable product settling, and the need to protect the package.

32.   On June 12, 2017, Plaintiff LAU, purchased her Pret A Manger® Chakalaka Wrap Product from a Pret A Manger located at 265 Madison Avenue in Manhattan for $7.49. The Chakalaka Wrap contained a full inch of slack-fill in between the two halves of the wrap. *See* **Exhibit A**, p. 1. Below is an image:





33.   On November 10, Plaintiff LAU purchased her Pret A Manger® Spicy Shrimp & Cilantro Wrap from a Pret A Manger located at 821 Broadway in Manhattan for approximately $7.79. The ® Spicy Shrimp & Cilantro Wrap contained about 1.5 inches of slack-fill in between the two halves of the wrap. *See* **Exhibit A**, p. 2. Below is an image:





34.     On June 5, 2017, Plaintiff ALEXANDER, purchased his Pret A Manger® Wrap

Product from a Pret A Manger located at 265 Madison Avenue in Manhattan for approximately

$7.29. The Summer Seasonal Wrap contained about 1.75 inches of slack-fill in between the two

halves of the wrap. *See* **Exhibit A**, p. 3. Below is an image:





**The Other Products Are Also Slack-Filled**

35.     The empty space in the sandwich Plaintiffs purchased could not be attributed to

variance because all the other Products contain identical fraudulent packaging that hides slack-fill.

10

In addition to containing identical packaging, the Products are also essentially uniform in size and shape, despite being hand made. This uniformity exists within each flavor, regardless of which restaurant an individual wrap Product is made in. In addition, Products are essentially uniform in size and shape across flavors, even when comparing wrap Products from different restaurants. This is attributable to Defendants' nature as a centrally-controlled restaurant chain, in which wrap Products are produced to be essentially identical to each other across restaurants. The wrap Products are all produced to use the same wrap container, with the same deceptive cardboard shroud.

36.    At the time Plaintiff LAU filed her Original Complaint on July 31, 2017, Defendants' wraps nearly universally had slack-fill of 1 inch to 2.5 inches, as shown in the images below.

37.    Below is an image of the Greek Falafel Wrap showing approximately 1.75 inches of slack-fill. *See* **Exhibit A**, p. 4.



38.    The Pret A Manger® Green Goddess Turkey Wrap has approximately 1.5 inches of air. Below is an image of the Green Goddess Turkey Wrap revealing approximately 1.5 inches of slack-fill. *See* **Exhibit A**, p. 5.



39.     The Pret A Manger® Avocado & Toasted Pine Nut Wrap has approximately 2.5 inches of air. Below is an image of the Avocado & Toasted Pine Nut Wrap revealing approximately 2.5 inches of slack-fill. *See* **Exhibit A**, p. 6.



40.     The Pret A Manger® Bang Bang Chicken Wrap has approximately 1.25 inches of air. Below is an image of the Bang Bang Chicken Wrap revealing approximately 1.25 inches of slack-fill. *See* **Exhibit A**, p. 7.



41.     The Pret A Manger® Mustard, Chicken and Swiss Wrap has approximately 1.5 inches of air. Below is an image of the Mustard, Chicken and Swiss Wrap showing approximately 1.5 inches of slack-fill. *See* **Exhibit A**, p. 8.



42.     Before Plaintiff LAU filed her Original Complaint on July 31, 2017, Defendants' Products nearly universally contained slack-fill, as shown by the images in the Original Complaint, including those reproduced above. Since shortly after Plaintiff LAU filed, Defendants have notably reduced the frequency and extent of slack-fill. Nonetheless, the Products are still regularly sold with hidden slack-fill beneath the cardboard shroud. Plaintiffs' counsel further investigated all available flavors from 44 Pret locations in the New York area from October 16, 2017 to November 10, 2017, measuring at least four sandwiches per store location (if  available), all in different flavors. Plaintiffs' counsel videotaped the opening of each sandwich and recorded the amount of hidden air it contained. As detailed in **Exhibit B**, about 45% of Defendants' wraps currently have hidden slack-fill. This slack-fill averages about 0.9 inches per slack-filled wrap and is as much as two inches per wrap. At trial, Plaintiffs will prove by deposition testimony that Defendants' employees specifically reduced their target quantity of slack-fill in response to Plaintiff LAU's Original Complaint.

**Defendants' Slack-Fill Is Non-Functional**

43.     Defendants manufacture, market and sell the Products with non-functional slack-fill in violation of the Federal Food Drug & Cosmetic Act ("FDCA") Section 403(d) (21 U.S.C. 343(d)), the Code of Federal Regulations Title 21 part 100, *et seq.*, as well as the laws prohibiting misbranded food in New York and the other states in which the Products are sold, which impose requirements identical to federal law.

44.     Slack-fill is air or filler material within a packaged product. Slack-fill that is necessary as part of the manufacturing process, is the result of contents settling during shipping, or that is necessary to protect the product is "functional" slack-fill and is not proscribed. "Non-functional" slack-fill is slack-fill that serves no legitimate purpose. "The [FDA] also finds that slack-fill in excess of that necessary to accomplish a particular function is nonfunctional slack-fill." 58 FR 64123, 64127. When consumers purchase a package of Defendants' Products, they are getting less product than they bargained for. Effectively, they are tricked into paying for air, because the Products contain large amounts of non-functional slack-fill.

45.     Under § 403(d) of the FDCA (21 U.S.C. § 343(d)), a food shall be deemed to be misbranded "[i]f its container is so made, formed, or filled as to be misleading."

46.     The FDA has implemented § 403(d) through 21 C.F.R. § 100.100, which states:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

47.     None of these six safe harbors apply to Defendants' Products. Therefore, the slack-fill in the Products is deceptive and unlawful.

48.     Safe harbor (1) does not apply because the slack-fill in question is in the middle of the package and so does not have a protective function. The slack-fill keeps the two halves of the wrap separate. But given that these wraps are soft sandwiches, they lack the potential to damage each other, and the air does nothing to protect the Products from external damage.

49.     Safe harbor (2) does not apply because there is no plausible reason why the inclusion of more food and less air would prevent a machine from enclosing the Products in plastic.

50.     Safe harbor (3) does not apply because the Product is not a bag of chips but a wrap, whose contents do not settle.

51.     Safe harbor (4) does not apply because the cardboard shroud does not provide any packaging value or perform a specific function.

52.     Safe harbor (5) does not apply because the Pret A Manger® Chakalaka Wrap is not packaged in a reusable container.

53.     Safe harbor (6) does not apply because there is no reason the packaging in the Product could not be a few inches shorter. One could reduce the size of the packaging by pushing the ends of the wraps together.

54.     The real explanation for Defendants' slack-fill lies in Defendants' desire to mislead consumers about how much product they are actually purchasing and thus increase sales and profits. Defendants' use non-functional slack-fill to mislead consumers into believing that they are receiving more wrap than they are actually being sold. The packaging of the Products is uniformly made out of partially opaque wrappings so that consumers cannot see the slack-fill therein, thus giving Plaintiffs and the Class the false impression that there is more wrap inside than there actually is.

**Non-Functionality Of The Products' Slack-Fill is Demonstrated by Defendants' Other Sandwiches**

55.     Since there is no justification for any slack-fill in the Product packaging, all of the slack-fill is nonfunctional slack-fill. This is demonstrated by the fact that Defendants are able to package very similar or identical food without any slack-fill whatsoever.

56.     Below is an image of the Turkey and Avocado Caesar on Artisan. *See* **Exhibit C, p. 1:**





57.     Unlike the packaging of the Products, the packaging of the Turkey and Avocado Caesar on Artisan provides consumers with an accurate picture of how much food they are purchasing.  This shows the Pret A Manger® Chakalaka Wrap does not need to be packaged in a manner with non-functional slack-fill

58.     That the slack-fill in the wrap Products is indeed unnecessary is also demonstrated by the fact that Pret A Manger's flatbreads, such as the Spicy Chicken and Avocado Flatbread, are packaged with no slack-fill at all. These are sold with the open ends facing the consumer. This packaging shows consumers exactly what they are purchasing and consequently does not contain misleading slack-fill. Below is an image. *See* **Exhibit C**, p. 2:





59.     There is no reason why the Products could not be packaged in this non-misleading

way.

60.     Defendants might argue that some portion of its slack-fill is functional because it

cannot guarantee that there will be absolutely no air in between the two halves of the Products.

Even if this is true, this does not excuse the slack-fill that is in excess of this minimum amount.

61.     The FDA has defined non-functional slack-fill as any slack-fill in excess of that

required to achieve the functional purposes listed in 21 C.F.R. § 100.100(a):

> FDA advises that the exceptions to the definition of "nonfunctional slack-fill" in §
> 100.100(a) apply to that portion of the slack-fill within a container that is necessary

for, or results from, a specific function or practice, e.g., the need to protect a product. <u>Slack-fill in excess of that necessary to accomplish a particular function is nonfunctional slack-fill.</u> Thus, the exceptions in § 100.100(a) provide only for that amount of slack-fill that is necessary to accomplish a specific function. FDA advises that <u>these exceptions do not exempt broad categories of food</u>, such as gift products and convenience foods, from the requirements of section 403(d) of the act. For example, § 100.100(a)(2) recognizes that some slack-fill may be necessary to accommodate requirements of the machines used to enclose a product in its container and is therefore functional slack-fill. However, § 100.100(a)(2) does not exempt all levels of slack-fill in all mechanically packaged products from the definition of nonfunctional slack-fill.

58 FR 64123, 64126 (emphasis added).

62.     Thus, the possibility that some portion of the slack-fill in Defendants' Products may be justified as functional based on the exemptions in §100.100(a) does not justify slack-fill that is in excess of that required to serve a legitimate purpose. Defendants' slack fill serves no purpose other than to mislead consumers about the quantity of food they are actually purchasing. *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 405 (E.D.N.Y. 2010) ("Misleading consumers is not a valid reason to package a product with slack-fill. *See* 21 C.F.R. § 100.100(a)(1– 6).").

**<u>New York Law Mirrors Federal Law</u>**

63.     Food labeling law and regulations of New York impose requirements which mirror federal law.

64.     Pret A Manger's non-functional slack-fill is prohibited by multiple New York laws designed to protect consumers against unfair and deceptive trade practices. New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading." NY GBL § 349 prohibits misleading practices and declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." NY GBL § 350 prohibits misleading practices and declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service

19

in this state is hereby declared unlawful." The wrap Products are misbranded regardless of whether or not Pret A Manger intended to mislead consumers. Intent to mislead is not an element of NY GBL § 349 or § 350.

65.     New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading." Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations (1 NYCRR § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

> "For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (2) Part 100 of title 21 of the *Code of Federal Regulations* [21 C.F.R. 100 et seq.], containing Federal definitions and standards for food packaging and labeling *General* at pages 5-10.…"

1 NYCRR § 259.1(a)(2).

66.     Courts have acknowledged the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions"); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) ("Here [in a slack-fill case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA.").

67.     While consumers may have come to expect significant slack-fill in wraps and other products, this does not eliminate Defendants' deception. The FDA has stated that "although

consumers may become used to the presence of nonfunctional slack-fill in a particular product or product line, the recurrence of slack-fill over an extended period of time does not legitimize such slack-fill if it is nonfunctional." 58 FR 64123, 64131.

68.     A Reasonable Consumer Would Be Deceived By Defendants' Misrepresentation

69.     Defendants' Product packaging was a material factor in Plaintiff's and Class members' decisions to purchase the Products and pay the advertised price for them because reasonable consumers would attach importance to the quantity of food they believe they are purchasing.

70.     As detailed below, reasonable consumers understand packaging size as an indicator of the amount of food contained inside a package. Therefore, reasonable consumers would be deceived by misleading packaging size.

**Plaintiffs and the Class Reasonably Relied On Defendants' Deceptive Representations**

71.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products contained non-functional slack-fill as set forth herein, and would not have bought the Products at the given prices had they known the truth about them.

72.     Plaintiffs and the Class made their purchases in reliance on the representations made by the size of product packaging. Reasonable consumers such as Plaintiffs LAU and ALEXANDER expect a full package when they purchase a wrapped sandwich. Pret A Manger's packaging of other sandwiches, such as the Turkey and Avocado Caesar on Artisan, conforms to this common-sense standard.

73.     Defendants knew that the Products contained non-functional slack-fill, since they are the ones who produced them.

21

74.     Plaintiffs and the Classes reasonably relied on the size of the Products' packaging to infer how much food they were purchasing and reasonably believed that the packaging was filled with the Products as closely to capacity as functionally possible.

75.     Defendants intended that Plaintiffs and the Class rely on the size of the Products' packaging as a measure of the amount of food contained therein.

76.     The FDA has explained why such reliance is reasonable:

> Consumers develop expectations as to the amount of product they are purchasing based, at least in part, on the size of the container. The congressional report that accompanied the FPLA stated: "<u>Packages have replaced the salesman</u>. Therefore, it is urgently required that the information set forth on these packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make value comparisons among comparable products" (H.R. 2076, 89th Cong., 2d sess., p. 7 (September 23, 1966)). <u>Thus, packaging becomes the "final salesman" between the manufacturer and the consumer, communicating information about the quantity and quality of product in a container</u>. Further, Congress stated (S. Rept. 361, supra at 9) that "<u>Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label</u>."

58 FR 64123, 64131 (emphasis added).

77.     Congress recognized that the size of a package is in and of itself a kind of sales pitch, even if not made with words or numbers. Thus, consumers reasonably rely on packaging size as a representation of quantity.

78.     Defendants might argue that Plaintiffs and the Class should not have relied on the packaging's size to infer its contents because they could have manipulated the packaging in order to acquire a sense of the slack-fill therein (i.e., by poking it to feel the air). But the FDA has stated that such manipulation cannot be reasonably expected of consumers:

> FDA advises that the entire container does not need to be transparent to allow consumers to fully view its contents, i.e., a transparent lid may be sufficient depending on the conformation of the package. On the other hand, FDA finds that <u>devices, such as a window at the bottom of a package, that require consumers to manipulate the package, e.g., turning it upside down and shaking it to redistribute the contents, do not allow consumers to fully view the contents of a container</u>. FDA

finds that such devices do not adequately ensure that consumers will not be misled as to the amount of product in a package. Therefore, such foods remain subject to the requirements in § 100.100(a) that slack-fill in the container be functional slack-fill.

58 FR 64123, 64128 (emphasis added).

79.    The FDA was here contemplating a scenario in which manipulating a package might permit an accurate visual estimate of its contents. But the same principle applies to tactile estimates. The possibility that manipulating a package might yield additional insight into its contents does not exculpate non-functional slack-fill. The possibility of manipulating the package to discover the truth about it does not eliminate the false impression conveyed by the disproportionately large size of the Product packaging.

80.    Furthermore, the FDA was describing a scenario in which a package may be misleading despite accurately describing the net weight of its contents. Defendants' Products do not list their net weight. Consumers' understanding of how much food they will receive is purely created by the shape of the Product packaging, with its misleadingly placed clear plastic windows and occluding cardboard shroud.

**Plaintiffs and the Class Were Injured By Defendants' Deceptive Conduct**

81.    Pret A Manger's deceptive practices caused economic harm to Ms. LAU and the Class because they were promised, and paid for, a full portion of the Products but received less than a full portion. Accordingly, they were deprived of the full benefit of their bargain in an amount corresponding to the percentage of the Product packaging comprised of non-functional slack-fill.

82.    Plaintiffs and Class members were injured as the result of Defendants' deceptive conduct because they paid money for less Product than Defendants represented they would be receiving. Since they would not have agreed to this exchange had they known the truth, they were deprived of the benefit of their bargain. In order for Plaintiffs and Class members to be made

23

whole, they must be compensated in an amount consisting in the proportion of the purchase price equal to the percentage of non-functional slack-fill in the Products, which is equivalent to the amount of Product Plaintiff and the Class paid for but that Defendants did not-deliver. *See Lazaroff v. Paraco Gas Corp*., 2011 NY Slip Op 52541(U), ¶ 6, 38 Misc. 3d 1217(A), 1217A, 967 N.Y.S.2d 867, 867 (Sup. Ct.) ("Plaintiff alleges that, had she understood the true amount of the product, she would not have purchased it, and that she and the purported members of the lass paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of her bargain, i.e., a full 20 pound cylinder and the amount of propane she was promised…Thus, plaintiff has properly alleged injury. Accordingly, the court finds that the plaintiff has stated a claim for a violation of GBL § 349."); *Kacocha v. Nestle Purina Petcare Co*., No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("Indeed, in her Complaint, Plaintiff seeks monetary damages on the grounds that she "would not have paid the premium price she paid" to buy the Products had she "known the truth."… Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive.").

## CLASS ACTION ALLEGATIONS

83.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate; (the "Nationwide Class").

84.     In the alternative Plaintiffs seeks to represent the following class:

> All persons who made retail purchases of the Products during the applicable limitations period in New York, and/or such subclasses as the Court may deem appropriate; (the "New York Class").

85.     The proposed Classes exclude current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants,

Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned

86.     The Class members are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through the appropriate discovery, Plaintiffs believe that there are thousands of members in both proposed Classes. Other members of the Classes may be identified from records maintained by Defendants and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

87.     Plaintiff's claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendants' wrongful conduct.

88.     Plaintiffs will fairly and adequately protect the interests of the members of the Classes in that Plaintiffs have no interests antagonistic to those of the other members of the Classes. Plaintiffs have retained experienced and competent counsel.

89.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Classes to individually seek redress for the wrongful conduct alleged herein.

90.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. Among the questions of law and fact common to the Classes are:

    i.   Whether Defendants labeled, packaged, marketed, advertised and/or sold Products to Plaintiffs and Class members using false, misleading and/or deceptive packaging;

    ii.   Whether Defendants' actions constitute violations of 21 U.S.C. § 343(d) and state consumer protection laws;

    iii.   Whether Defendants omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of the Products;

    iv.   Whether Defendants' labeling, packaging, marketing, advertising and/or selling of the Products constituted an unfair, unlawful or fraudulent practice;

    v.   Whether the packaging of the Products during the relevant statutory period included unlawful non-functional slack-fill;

    vi.   Whether, and to what extent, injunctive relief should be imposed on Defendants to prevent such conduct in the future;

    vii.   Whether the members of the Classes have sustained damages as a result of Defendants' wrongful conduct;

    viii.   Whether Defendants purposely chose to use partially opaque packaging in the wrap so that Plaintiffs and Class members would not be able to see the amount of slack-fill contained in the Products; and

    ix.   The appropriate measure of damages and/or other relief.

91.    The membership of the Classes is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs know of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

92.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will prevent the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

93.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

94.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

95.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

96.     Defendants' conduct is generally applicable to the Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Classes appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(Brought individually and on behalf of the Nationwide Class, in conjunction with the
substantively similar consumer protection laws of the other states and the District of
Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in
the alternative, on behalf of the New York Class).**

97.     Plaintiffs reallege and incorporate herein by reference the allegations contained in
all preceding paragraphs, and further alleges as follows:

98.     Plaintiffs bring this claim individually and on behalf of the other members of the
Nationwide Class, or alternatively the New York Class, for an injunction for violations of New
York's Deceptive Acts or Practices Law, General Business Law ("NY GBL") § 349.

99.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any
business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

100.    Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the
extent that the Appellate Division order imposed a reliance requirement on General Business Law
[§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory
claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal
citations omitted)).

101.    The practices employed by Defendants, whereby Defendants advertised, promoted,
marketed and sold their Products in packaging containing non-functional slack-fill are unfair,
deceptive and misleading and are in violation of the NY GBL § 349. Moreover, New York State
law broadly prohibits the misbranding of foods in language identical to that found in regulations
promulgated pursuant to the FDCA § 403 (21 U.S.C. 343(d)). Under New York Agm. Law § 201,

28

"[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading."

102.    The foregoing deceptive acts and practices were directed at consumers.

103.    Defendants should be enjoined from packaging their Products with non-functional slack-fill as described above pursuant to NY GBL § 349, New York Agm. Law § 201, and the FDCA, 21 U.S.C. § 343(d).

104.    Plaintiffs are at risk of several types of future injury, each of which justifies the imposition of an injunction. First, Defendants misleadingly manufacture many different flavors and sizes of Products with non-functional slack-fill, and so Plaintiffs may be deceived into purchasing a slack-filled Pret A Manger Product again (whether the exact same size and flavor as before or not), causing the same type of economic injury as enumerated in the complaint.

105.    Second, Plaintiffs are no longer able to rely on Defendants' representations, regardless of whether the representations are true or false. Plaintiffs know that the Products have been packaged with grossly excessive slack fill. They also know that Pret A Manger's Turkey and Avocado Caesar on Artisan and Pret A Manger's Spicy Chicken and Avocado Flatbread have been packaged with no slack fill (i.e., in a non-misleading way), but they cannot rely on Defendants' future representations about their food absent a protective injunction. Neither Plaintiffs LAU nor ALEXANDER can rely on Defendants' packaging or quantity representations.

106.    Plaintiff LAU's experience exemplifies these concerns. At the time of her Original Complaint, Plaintiff LAU did know of the existence of the Spicy Shrimp & Cilantro Wrap, and did not know that it is slack-filled like the others. She later bought the wrap, having determined upon examination that it had no slack-fill. Plaintiff LAU enjoys the Products and knows that now some Products happen to be packaged without slack-fill. She intends to purchase the Products

again, but is concerned that she may again receive a wrap with slack-fill that would make it worth

less than what she paid for it.

107.    Third, Plaintiffs will hesitate to purchase Defendants' products even if it ceases its

unlawful labeling practices and begins packaging its Products without slack-fill. If the Products

are no longer sold with non-functional slack-fill, then Plaintiffs could not take advantage of those

products because they have been misled into believing that the Products have non-functional slack-

fill. Courts have acknowledged that this risk can justify an injunction:

> [S]ome courts have focused on the particular nature of the injury at issue to find
> standing. They have found at least two injuries sufficient to establish standing
> where the plaintiff is aware of the misrepresentation: absent an injunction, the
> plaintiff-consumer will 1) no longer be able to confidently rely on the defendants'
> representations (*see Ries*, 287 F.R.D. at 533), and 2) refrain from purchasing
> products in the future even if they in fact conform to her expectations (*see Lilly v.*
> *Jamba Juice Company*, No. 13-cv-02998-JST, 2015 U.S. Dist. LEXIS 34498, 2015
> WL 1248027, at *3-5 (N.D. Cal. March 18, 2015).

> When a consumer discovers that a representation about a product is false, she
> doesn't know that another, later representation by the same manufacturer is also
> false. She just doesn't know whether or not it's true. A material representation
> injures the consumer not only when it is untrue, but also when it is unclear whether
> or not is true.

*Duran v. Hampton Creek*, No. 3:15-cv-05497-LB, 2016 U.S. Dist. LEXIS 41650 (N.D. Cal. Mar.
28, 2016).

108.    Plaintiff ALEXANDER has refrained from purchasing food from Defendants

since his June 5 purchase because of his concern that, if he did purchase food from Defendants,

he would receive less food than he had bargained for. If Defendants voluntarily correct their false

and misleading practices, an injunction is still warranted to protect consumers such as Plaintiff

ALEXANDER and Class members and restore their ability to take advantage of the Products.

109.    The Court should follow the lead of California Federal Courts and recognize that a

plaintiff may be injured after she learns of a manufacturer's deception, even though she is unlikely

to fall victim to the exactly the same scheme again in exactly the same manner. To hold otherwise

would immunize manufacturers and render injunctive relief impossible in consumer fraud class action lawsuits – if learning of a deception removed a Plaintiff's standing to seek an injunction, then wrongdoers could violate the law with impunity, defeating the purpose of consumer protection statutes.

110.    Plaintiffs, on behalf of themselves and all others similarly situated, respectfully seek a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(Brought individually and on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class).**

111.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

112.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class, or alternatively the New York Class, for violations of NY GBL § 349.

113.    Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in her own name to enjoin such unlawful acts or practices, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions. The Court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the Court finds the defendants willfully or knowingly violated this section. The Court may award reasonable attorney's fees to a prevailing plaintiff.

114.    By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by misbranding their Products so that they appear to contain more food in the packaging than is actually included.

115.    The practices employed by Defendants, whereby Defendants advertised, promoted, marketed and sold their Products in packages resulting in non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL § 349, New York Agm. Law § 201 and the FDCA (21 U.S.C. § 343(d)).

116.    The foregoing deceptive acts and practices were directed at consumers.

117.    Plaintiffs and the other Class members suffered a loss as a result of Defendants' deceptive and unfair trade practices. Specifically, as a result of Defendants' deceptive and unfair acts and practices, Plaintiffs and the other New York Class members suffered monetary losses from the purchase of the Products. In order for Plaintiffs and the Class members to be made whole, they must receive a refund of the percentage of the purchase price of the Products equal to the percentage of non-functional slack-fill in the Products.

**COUNT III**

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1)**
**(FALSE ADVERTISING)**

**(Brought individually and on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class).**

118.    Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs, and further allege as follows:

119.    Defendants have been and/or is engaged in the "conduct of...business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

120.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising means "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

121.    Pursuant to the FDCA as implemented through 21 C.F.R. § 100.100, package size is an affirmative representation of quantity. Thus, the non-functional slack-fill in Defendants' Products constituted false advertising as to the quantity of chips contained therein. Defendants caused this false advertising to be made and disseminated throughout New York.

122.    Defendants' affirmative misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendants' material misrepresentations.

123.    Defendants have violated N.Y. Gen. Bus. Law § 350 because their misrepresentations regarding the Products, as set forth above, were material and likely to deceive a reasonable consumer.

124.    Plaintiffs and Class members have suffered an injury, including the loss of money or property, as a result of Defendants' false and misleading advertising. In purchasing the Products, Plaintiffs and Class members relied on the misrepresentations regarding the quantity of the Products that was actually food rather than non-functional slack-fill. Those representations were false and/or misleading because the Products contain substantial hidden non-functional slack-fill, enabling Defendants to overcharge for the amount of food they actually deliver, which is less than they advertise and promise to deliver. Had the New York Class known this, they would not have purchased their Products or paid as much for them.

33

125.    Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiffs and Class members seek monetary damages (including actual, minimum, punitive, treble, and/or statutory damages), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**COUNT IV**

**COMMON LAW FRAUD**

**(Brought individually and on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class).**

126.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

127.    Defendants intentionally made materially false and misleading representations regarding the packaging of the Products.

128.    Plaintiffs and members of the Class reasonably relied on Defendants' false and misleading representations and did not know the truth about the quantity of food consumers were purchasing at the time. Defendants knew and intended that Plaintiffs and the Class would rely on its misrepresentations.

129.    Plaintiffs and members of the Class have been injured as a result of Defendants' fraudulent conduct.

130.    Defendants are liable to Plaintiffs and members of the Class for damages sustained as a result of Defendants' fraud.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendants as follows:

(A)     For an Order certifying the Nationwide Class or, in the alternative, the New York Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

(B)     For an Order declaring that Defendants' conduct violates the statutes referenced herein;

(C)     For an Order finding in favor of Plaintiffs and members of the Class;

(D)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(E)     For prejudgment interest on all amounts awarded;

(F)     For an Order of restitution and all other forms of equitable monetary relief;

(G)     For injunctive relief ordering Defendants to repackage the Products without non-functional slack-fill;

(H)     For an Order awarding Plaintiffs and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and

(I)     For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a jury trial on all claims so triable.


Dated: November 13, 2017

Respectfully submitted,


*/s/ C.K. Lee* _____
By:  C.K. Lee, Esq.


**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*