USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- x

YEE TING LAU, et al.,

Plaintiffs,

-against-

17-cv-5775 (LAK)

PRET A MANGER (USA) LIMITED, and
JOHN DOE CORPORATIONS 1-100,

Defendants.

---------------------------------------- x

**MEMORANDUM OPINION**

Appearances:

C.K. Lee
Anne M. Seelig
LEE LITIGATION GROUP PLLC
*Attorneys for Plaintiffs*

Daniel A. Dingerson
Ina B. Scher
DAVIS & GILBERT LLP
*Attorney for Defendant*

LEWIS A. KAPLAN, *District Judge.*

Plaintiffs Yee Ting Lau and Jeff Alexander bring this action on behalf of themselves and purportedly others similarly situated against Pret A Manger (USA) Limited and John Doe Corporations 1-100.[1] The amended complaint ("Complaint") alleges fraud and violations of New

---

1 Am. Compl. [DI 13] ¶ 1, 7.

York General Business Law ("GBL") §§ 349 and 350.[2] The matter is before the Court on defendants' motion to dismiss. For the reasons discussed below, the motion is granted in part and denied in part.

*Factual Background*

Pret A Manger (USA) Limited and John Doe Corporations 1-100 ("Pret" or "defendants") operate food stores in New York (including New York City), Chicago, Washington, D.C., and Boston.[3] Defendants sell, among other products, sandwich wraps, which are at issue in this matter.[4] The wraps are packaged in clear plastic with a cardboard sleeve around the middle of the sandwich, obstructing consumers' view of the center of the wrap.[5] Each wrap is cut in half and placed end to end inside the package with the cut side exposed through the clear plastic.[6] Pret makes, packages, and sells approximately eight varieties of wraps in this manner.[7]

Over a period of several months, plaintiff Lau bought three wraps from three different Manhattan Pret locations. Each allegedly contained some empty space, or "slack-fill," between the

---

2 *Id.* ¶¶ 97-130.

3 *Id.* ¶ 2.

4 *Id.* ¶ 1.

5 *Id.* ¶¶ 3, 32.

6 *Id.*, *passim*.

7 *Id.* ¶ 7.

two halves of the wrap.[8] In each instance, the slack-fill was between the two halves of the wrap beneath the cardboard sleeve.[9]

The amended complaint alleges that defendants' packaging is deceptive because it conceals non-functional slack-fill and misleads consumers about the amount of wrap they receive for the price charged.[10] Plaintiff Lau alleges intent to purchase Pret wraps again in the future but claims that she is concerned that any slack-fill in the wrap might make it worth less than the price charged.[11] Both plaintiffs assert that they no longer are able to rely on defendants' packaging, which will make plaintiffs hesitate or refrain from purchasing Pret wraps in the future.[12]

The Complaint alleges fraud and violations of New York GBL §§ 349 and 350.[13] Plaintiffs seek injunctive relief and damages on behalf of themselves and a putative class of all purchasers of Pret wraps in the United States, or alternatively New York state, during the applicable limitations period.[14]

---

8 *Id.*

9 Am. Compl. [DI 13] ¶ 33.

10 *Id.* ¶ 54.

11 *Id.* ¶ 106.

12 *Id.* ¶ 105, 107-08.

13 *Id.* ¶¶ 97-130.

14 *Id.* ¶¶ 83-84, 97-130.

*Discussion*

Defendants move to dismiss the Complaint on the grounds that plaintiffs (1) lack standing to seek injunctive relief; (2) lack standing to bring certain claims on behalf of putative class members; (3) have failed to state a claim upon which relief may be granted under GBL §§ 349 and 350; and (4) have failed to state a claim for common law fraud.

*Standing to Seek Injunctive Relief*

Plaintiffs' first claim seeks injunctive relief under GBL §§ 349 and 350 for defendants' allegedly unfair and deceptive practice of packaging wraps with non-functional slack-fill causing plaintiffs to receive less food than they bargained for and rendering plaintiffs unable to rely on representations implicitly made through defendants' packaging. Defendants move to dismiss plaintiffs' claims for injunctive relief for lack of standing because plaintiffs have not sufficiently alleged that they intend to purchase Pret wraps again in the future and therefore face a real threat of injury.

Standing is a question of subject matter jurisdiction and determines whether a federal court has power to hear an action.[15] A plaintiff "must demonstrate standing for each claim and form of relief sought."[16] To allege standing sufficiently, a plaintiff must aver (1) an injury in fact that is concrete and particularlized, and actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable

15 *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011).

16 *Id.* (*quoting Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).

decision.[17] An injury that is merely conjectural or hypothetical will not support Article III standing.[18] To state a claim for injunctive relief, a plaintiff who has been injured previously must allege facts supporting an inference of a sufficient likelihood that he or she will be injured again in a similar way.[19]

In a deceptive business practices action under GBL §§ 349 and 350, the Second Circuit has determined that absent an intent to "purchase the offending product in the future," a plaintiff lacks standing to seek injunctive relief.[20] The Complaint alleges that Lau "intends to purchase [Pret wraps] again,"[21] and "intends to do so to the extent that she infers that a particular unique wrap . . . contains the full quantity of food represented and no slack-fill."[22] As for Alexander, the Complaint alleges that "[s]hould [he] encounter [Pret wraps] in the future," he would "still be willing to purchase the [wraps], as long as he is assured that []he is not paying for empty space within the package."[23]

Rather than demonstrate the plaintiffs' intent to buy Pret wraps in the future–and

17 *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

18 *Id.*, at 560.

19 *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

20 *Kommer v. Bayer Consumer Health*, 710 Fed. App'x 43, 44 (2d Cir. 2018).

21 Am. Compl. [DI 13] ¶ 106.

22 *Id.* ¶ 20.

23 *Id.* ¶ 23.

therefore their risk of future economic harm–these allegations show the plaintiffs' resistance to engaging in such a commercial transaction again. Alexander has indeed "refrained from purchasing food from defendants,"[24] and both plaintiffs state that they will not purchase defendants' wraps without an assurance that they are not paying for "empty space,"[25] which assurance, they admit, even non-deceptive packaging might not provide.[26] On these facts, there is no sufficient basis for inferring that plaintiffs ever would seek to purchase a Pret wrap again as long as the status quo persists. Therefore, the Court is unpersuaded that the plaintiffs face a real threat of future economic injury.

Some courts in this district have followed the Ninth Circuit's lead[27] and found that a plaintiff's inability to rely on the defendants' packaging–as plaintiffs allege here[28]–is enough to establish injury, and therefore standing, for claims seeking injunctive relief.[29] While this Court is

---

24 *Id.* ¶ 108.

25 *Id.* ¶ 23.

26 *Id.* ¶ 107.

27 *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) (holding that a consumer who purchased a wrongfully labeled product had standing for injunctive relief because that consumer faced an ongoing injury: the inability to rely on the truth of the inaccurate label).

28 Pl. Mem. [DI 16] at 9-10.

29 *See, e.g., Ackerman v. Coca-Cola Co.*, No. 09-cv-395 (DLI) (RML), 2013 WL 7044866 at *15 n.23 (E.D.N.Y. July 18, 2013) ("[C]ourts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief." (internal quotations omitted). *But see Izquierdo v. Mondelez International, Inc.*, No. 16-cv-4697 (CM), 2016 WL 6459832 at *5 (E.D.N.Y. Oct. 26, 2016) (finding that an inability to rely on the truthfulness of packaging is not a commercial injury and stating that the Supreme

sympathetic to the need to avoid immunizing corporations from actions targeting deceptive practices that harm consumers, it is not persuaded that plaintiffs have demonstrated injury deserving of a departure from *Lujan*'s rules and the Second Circuit's clear inclination to decline to find standing in circumstances such as these.

*Standing to Bring Certain Claims on Behalf of Putative Class Members*

Plaintiffs bring their second and third claims under GBL §§ 349 and 350 individually and on behalf of a putative class to recover the difference between the value of the amount of food they thought they purchased and the value of that which they actually received. Defendants move to dismiss these claims to the extent that they relate to varieties of Pret wraps that plaintiffs never purchased on the grounds that plaintiffs cannot show a "concrete and particularized" injury that they suffered personally, and therefore lack standing to bring these claims on behalf of a class.[30]

"In a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual. . . injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants."[31] The purpose of this standard is to ensure that the "plaintiff's litigation incentives are sufficiently aligned with

---

Court's position is controlling–thus, the plaintiffs must plead "a likelihood of future injury in order to show standing to sue for an injunction").

30 Def. Mem. [DI 15] at 12 (*quoting Lujan*, 504 U.S. at 560-61).

31 *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (internal quotations and citations omitted).

those of the absent class members that the named plaintiff may properly assert claims on their behalf."[32]

Plaintiffs assert that all Pret wraps are "sufficiently similar" to support class standing[33] and, moreover, that the manner in which the wraps are packaged is the same across the board.[34] The Court agrees. The alleged injurious conduct–deceptive packaging of Pret wraps–implicates the same set of concerns regardless of the type of wrap purchased.[35] Defendants attempt to defeat class standing by emphasizing the unique ingredients and preparation of the wraps,[36] but those factors are inapposite to the conduct alleged to have caused injury to plaintiffs or members of the putative class.[37] All varieties of Pret wraps allegedly are packaged in the same way.

---

32 *Retirement Bd. of the Policemen's Annuity and Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014).

33 Pl. Mem. [DI 16] at 11 (*quoting Mosely v. Vitalize Labs, LLC*, No. 13-cv-2470 (RJD) (RLM), 2015 WL 50222635 at *7 (E.D.N.Y. Aug. 24, 2015)).

34 *See* Am. Compl. [DI 13] ¶ 35.

35 *See NECA-IBEW*, 693 F.3d at 162(internal quotations and citations omitted) (holding that the named plaintiff's claims implicated the same set of concerns as absent class members' claims because the named plaintiff and class members' investments were backed by loans from the same originators); *see also Gratz v. Bollinger*, 539 U.S. 244 (2003) (holding that a transfer applicant to the University of Michigan had standing to challenge the school's freshman admissions policy because the use of race in transfer and freshman admissions implicated the same set of concerns). *Cf. DiMuro v. Clinique Labs., LLC*, 572 Fed. App'x 27 (2d Cir. 2014) (finding that the plaintiff lacked class standing to pursue claims related to products never personally purchased because Clinique made different advertising claims for each product).

36 Def. Mem. [DI 15] at 13 (*citing Dimuro*, 572 F. App'x at 29).

37 *See, e.g., NECA-IBEW*, 693 F.3d at 162.

Plaintiffs therefore have standing to bring claims based on varieties of Pret wraps they never personally purchased on behalf of a class.

*Sufficiency of Claims for Relief Under GBL §§ 349 and 350*

Defendants move to dismiss plaintiffs second and third claims under GBL §§ 349 and 350 for failure to allege an essential element of the claim. To state a Section 349 claim, the plaintiff must allege that (1) the challenged act or practice was consumer-oriented; (2) it was misleading in a material way; and (3) the plaintiff suffered injury as a result of the deceptive act.[38] The parties dispute the sufficiency of the pleadings as to the third element.

To allege injury sufficiently under Section 349, plaintiffs must show actual or pecuniary harm.[39] A "claim will not lie where the deceptive act itself was the only injury,"[40] a rule established in *Small v. Lorillard Tobacco Co.*[41] In *Small*, plaintiffs brought claims under Sections 349 and 350 alleging that defendant tobacco companies used deceptive commercial practices to sell cigarettes and that but for the deception, they would not have purchased the cigarettes. Therefore, they sought recovery of the full purchase price; they did not "allege that the cost of cigarettes was

---

38

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (*quoting Stutman v. Chem. Bank*, 95 N.Y. 2d 24, 29 (2000)). The essential elements of a claim pursuant to § 350 are the same. *Orlander v. Staples, Inc.*, 802 F. 3d 289, 300 (2d Cir. 2015).

39

*Small v. Lorillard Tobacco Co.*, 94 N.Y. 2d 43 (1999).

40

*Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 452 (E.D.N.Y. 2012) (*citing Small*, 94 N.Y. 2d).

41

94 N.Y. 2d 43 (1999).

affected by the alleged misrepresentation."[42] The court held that there was no cognizable injury because deception alone is not enough.[43]

A plaintiff must allege something more. New York state and federal courts as well as the Second Circuit often look for a "price premium" formulation in the pleadings to find cognizable injury,[44] though a less strict formulation alleging that defendants' deceptive practices allowed them to charge a higher price than they otherwise could have for a certain product will suffice.[45]

---

42 *Small*, 94 N.Y. 2d at 56.

43 *Id.*

44 *See, e.g., Orlander*, 802 F.3d at 302 ("the issue of 'price premium' [in cases concerning consumable goods] [is] relevant because it show[s] that plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers"); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (reciting that a plaintiff "adequately alleges injury under GBL § 349 by claiming that he paid a premium for a product" and finding cognizable injury where plaintiffs alleged that they would not have purchased "fat-free" milk had they known it contained fat, or, alternatively, that they paid a premium for purportedly "fat-free" milk); *Izquierdo,* No. 16-cv-4697 (CM), 2016 WL 6459832 at *7 (holding no cognizable injury under GBL § 349 where plaintiffs bought a box of candy containing 28 pieces of candy and so labeled but allegedly able to accommodate 50 pieces because plaintiffs failed to allege "that they paid a higher price for the [c]andy than they would have, absent deceptive acts," and a simple recitation of the word "premium" in the Complaint does not make an injury cognizable).

45 *See Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361-62 (E.D.N.Y. 2014) (finding cognizable injury under the price premium formulation where the complaint alleged that, as a result of defendants' deceptive practice, plaintiff paid a price for a product that was higher than the product's actual worth); *Lazaroff v. Paraco Gas Corp.*, No. 09-28633, 2011 WL 9962089 at *6 (S. Ct. Kings Cnty., N.Y. 2011) (finding a cognizable injury under GBL § 349 where plaintiff who purchased propane in 20 pound canisters filled with 15 pounds of propane–as disclosed on the exterior–but labeled "full" adequately alleged that "had he understood the true amount of the product, he would not have purchased it," and that he"failed to receive what was promised and/or the benefit of his bargain").

Plaintiffs allege that they were injured because they received less than they bargained for due to the defendants' deceptive packaging and seek to recover the cost of the portion of wrap that plaintiffs expected to receive but did not due to the deception.[46] According to the Complaint, the deception was baked into the purchase price, as the value "warranted by Defendants' packaging" and charged by defendants was greater than the actual value of the wrap inside that packaging.[47] Plaintiffs therefore have adequately pleaded something more than pure deception and therefore have established a cognizable injury under GBL §§ 349 and 350.

*Sufficiency of Pleading Fraud Under New York Law*

Plaintiffs' fourth claim seeks damages for fraud under New York common law. Defendants move to dismiss the claim for failure to plead the element of intent.

To plead fraud under New York law, a plaintiff must allege: (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.[48] In federal court, a plaintiff must comply also with Rule 9(b), which requires plaintiffs to plead the circumstances constituting fraud with particularity, but allows

---

46 Am. Compl. [DI 13] ¶ 82.

47 Pl. Mem. [DI 16] at 16.

48 *Campbell v. Freshbev LLC*, No. 16-cv-7119 (FB) (ST), 2018 WL 3235768 at *8 (E.D.N.Y. July 3, 2018); *see also Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y. 3d 553, 559 (2009); *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, 12 N.Y. 3d 236, 242 (2009).

"[m]alice, intent, knowledge, and other condition[s] of mind to be averred generally."[49] Pleadings must "provide a factual foundation for otherwise conclusory allegations of scienter."[50]

According to plaintiffs, the circumstances of defendants' sale of wraps[51] with non-functional slack-fill and the benefit to defendants from these sales[52] are sufficient to supply a factual foundation and support an inference of intent to defraud.[53] These statements are conclusory and unsupported.[54] Moreover, concrete factual assertions in plaintiffs' complaint undercut their claim of fraud. Specifically, plaintiffs state that less than half, or 45 percent, of Pret wraps surveyed contained slack-fill.[55] Drawing all reasonable inferences in plaintiffs' favor, the Court finds that the facts are insufficient to nudge the plaintiffs' allegations of intent "across the line from conceivable to plausible."[56]

---

49 *Stern v. Leucadia Nat. Corp.*, 844 F.2d 997, 1004 (2d Cir. 1988) (internal quotations omitted).

50 *Id.*

51 Pl. Mem. [DI 16] at 18 (stating that "defendants knew that the products contained non-functional slack-fill, since they [were] the ones who produced them").

52 *Id.* (stating that "defendants have collected millions of dollars they would not have otherwise earned").

53 *Id.*

54 *See Stern*, 844 F.2d at 1004 (stating that conclusory suspicions as to defendants' motives will not suffice).

55 Am. Compl. [DI 13] ¶ 42.

56 *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curium) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

*Conclusion*

Defendants' motion [DI 14] to dismiss the Complaint is granted with respect to Counts One and Four. It is denied in all other respects.

SO ORDERED.

Dated: September 28, 2018

Lewis A. Kaplan.
United States District Judge